# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:09cv22

| | |
|---|---|
| CONSUELO ALVAREZ COSBY, | )<br>) |
| Plaintiff, | )<br>) |
| Vs. | ) MEMORANDUM AND<br>) RECOMMENDATION |
| LOWE'S COMPANIES, INC., | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the court upon defendant's Motion for Judgment on the Pleadings. Having carefully considered defendant's Motion for Judgment on the Pleadings, plaintiff's Response, and defendant's Reply, and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I. Background

In this action plaintiff Consuelo Alvarez Cosby ( hereinafter "plaintiff") originally filed this action in the North Carolina General Court of Justice, Cherokee County Superior Court, alleging defendant Lowe's Companies, Inc. (hereinafter "Lowe's" wrongfully terminated her dependent life insurance benefits, a state common-law claim. Lowe's removed this action to federal court contending that because plaintiff's claims seek benefits under Lowe's employee Welfare Plan, ("Welfare Plan"), her claim is governed by the Employee Retirement Income Security

1

Act of 1974, as amended, ("ERISA"), 29 U.S.C. §1001, *et seq*.

Defendant now contends that because ERISA preempts plaintiff's claim, her claim should be treated as if it were a claim for benefits pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, with its attendant exclusive remedy provisions. Defendant contends that when reviewed under Section 502, such claim must be dismissed as plaintiff must first exhaust all administrative remedies available under the terms of that plan. It is plaintiff's contention that plaintiff failed to even engage in the administrative process, much less exhaust it, before filing this claim.

Plaintiff has filed a response claiming that her Complaint is governed by common law negligence, because

> Lowe's, not MetLife, was negligent in the manner in which it dealt with an employee going through severe medical problems with family members, causing Plaintiff to lose benefits which should have been available to her.

Response, at 1.

## II. Rule 12(c), Judgement on the Pleadings Standard

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P.12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the nonmovant's factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004); Atwater v. Nortel Networks, Inc., 394 F. Supp. 2d 730, 731 (M.D.N.C. 2005). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.

Bradley, 329 F. Supp. 2d at 622. The standard is similar to that used in ruling on Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." Continental Cleaning Serv. V. United Parcel Serv., Inc., 1999 WL 1939249, at *1 (M.D.N.C. April 13, 1999) (internal citations omitted).

In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice. Bradley, 329 F. Supp. 2d, at 622 (noting that the Court should consider documents attached to the pleadings); Hebert Abstract Co. v. Touchstone Prop., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (holding that court should consider pleadings and judicially noticed facts). Where an insurance policy is "integral to and explicitly relied upon in the complaint," the policy itself should be considered along with the factual allegations of the complaint and answer. Colin v. Marconi Commerce Sys. Employees' Retirement Plan, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004).

## III. Discussion

### A. Factual Background Drawn from the Complaint, Answer, and Other Pleadings

When she was employees by Lowe's, plaintiff enrolled in the dependent life insurance coverage offered by Lowe's to qualifying employees. She named her husband, Louis E. Cosby, as a dependent. Complaint, at ¶ 5, Exhibit A; Answer, at ¶ 5. She elected the Enhanced Death Benefit option, which provided for a $25,000 lump sum benefit in the event of the death of the named dependent. Complaint, at

¶ 5, Exhibit A; Answer ¶ 5.

In December 2007, plaintiff requested and received a 180-day personal leave of absence from her employment with Lowe's, effective December 29, 2007, and ending June 26, 2008. Complaint, at ¶ 10; Answer, at ¶ 10. Under the terms of the Welfare Plan, employees on approved leaves of absence must pay for continued benefit coverage "out-of-pocket" if not working enough hours to pay for the standard deductions toward benefit premiums. Answer, at Exhibit A, p. 23.

During such periods, the Lowe's Welfare Plan's third-party vendor, Key Benefit Administrators, Inc., sends by mail bi-weekly itemized statements to employees who are on leaves of absence. Answer, Exhibit A, p. 24. Statements must be paid within 30 days. Id. After that initial 30-day period, failure to remit payment within 14 days results in automatic cancellation of benefits. Id. Once coverage has been terminated for nonpayment, it cannot be restored. Id. Any employee wishing to re-enroll as a new participant in the Welfare Plan must repay any outstanding premium amounts before re-enrollment. Id.

Plaintiff admits in her Complaint that "[o]n occasion Plaintiff's spouse was late in making the payments" required to maintain coverage, Complaint, at ¶ 11, the parties dispute whether the tardy payments were made before the specified time for cancellation of benefits pursuant to the Welfare Plan Overview. Answer, at ¶¶ 11, 12, 14, 22, 25, Exhibit A, p. 23-24. On April 9, 2008, plaintiff received a warning letter advising her that the letter served as the "final notice of your pending group benefits coverage termination" for failure to make timely payment of premiums.

4

Complaint, at ¶ 12, Exhibit E; Answer, at ¶ 12. The parties dispute whether the notice contained in the April 9, 2008, letter, the language of the Welfare Plan Overview regarding the time in which to make payment, and the ramifications for failure to do so sufficiently put plaintiff on notice of her nonpayment of benefits and the consequences thereof. Complaint, at ¶¶ 12, 22, 25, Exhibit E; Answer, at ¶¶ 12, 22, 25, Exhibit A, p. 24.

Due to her alleged nonpayment of premiums, plaintiff's benefits were terminated effective April 18, 2008. Complaint, at ¶¶ 17, 22, Exhibit I; Answer, at ¶¶ 11, 14, 25. One month later, plaintiff's husband died of lung cancer on May 19, 2008. Complaint, at ¶ 13, Exhibit D. Plaintiff attached to her Complaint what appears to be a copy of a negotiated check to Key Bank dated June 9, 2008. Complaint, Exhibit F. On June 26, 2008, plaintiff's employment with Lowe's was terminated because she failed to return to work after exhausting the 180-day maximum leave of absence period. Complaint, at ¶ 19, Exhibit J; Answer, at ¶ 19.

On July 1, 2008, plaintiff filed a Life Insurance Claim Form with MetLife, the insurer and claims fiduciary of the Lowe's Welfare Plan dependent life insurance coverage plan. Complaint, at ¶ 16, Exhibit H; Answer, at ¶¶ 4, 16, Exhibit B, p. 6. The plan delegates full and final authority over all claims and appeals to MetLife. Answer, at ¶ 4. On September 17, 2008, MetLife denied plaintiff's claim for benefits due to the cancellation of coverage on April 18, 2008 for nonpayment. Complaint, Exhibit I.

In reviewing the Complaint and the exhibits attached thereto, it appears that

plaintiff was given notice in a September 17, 2008, denial of claim letter from MetLife that

> [t]he Lowe's Companies, Inc. Plan is regulated by Federal Law, specifically, the Employee Retirement Income Security Act of 1974 .... As claims fiduciary of the Lowes Companies, Inc. Plan, MetLife is required to administer claims in accordance with ERISA and the terms of the plan.
> * * *
> Under ERISA, you have the right to appeal this decision within 60 days after the receipt of this letter....
> * * *
> In the event your appeal is denied in whole or in part, you have the right to bring a civil action under Section 502(a) of ERISA.

Complaint, at Exhibit I. Thus, plaintiff was on notice that the claim at issue in this lawsuit was governed by a Plan, that MetLife was the Plan administrator, what her appeals process was under the Plan, and provided her with notice that she could only file a civil action only if her appeal was denied in whole or in part. Id. The full administrative appeal process was also set forth in the Lowe's Welfare Plan and further advised that a participant "cannot file suit in federal court until you have exhausted these appeals procedures." Answer, Exhibit B, at p. 9.

On February 20, 2009, plaintiff filed a civil action in state court challenging the denial of her claim in a cause of action styled "WRONGFUL TERMINATION OF BENEFITS." Complaint, § 2, at ¶¶ 20-29.b) ERISA Governs the Lowe's Welfare Plan.

### B. Plaintiff's Claim is Preempted By Erisa

The court has read in detail plaintiff's Complaint, which includes contentions that defendant prematurely terminated her dependent life insurance benefits,

**6**

contentions that she received defective notification of COBRA benefits, and her contentions that defendant failed to give her any opportunity to reinstate benefits after they were cancelled. Despite such allegations, she simply cannot avoid the fact that any rights she may have to the $25,000.00 life insurance proceeds from the dependent life insurance policy come from a Plan that, for better or worse, is governed by ERISA. A common law claim for "wrongful termination of benefits" is precisely the type of claim that is preempted by ERISA. Being a Plan governed by ERISA, plaintiff must first exhaust the administrative appeal process before bringing an action in this court.

ERISA governs the Lowe's Welfare Plan as an "employee welfare benefit plan" and "welfare plan" in that it is a:

> plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death . . .

29 U.S.C. § 1002(1). The Lowe's Welfare Plan Administration Document expressly states:

> The following information, together with other information contained in this book, comprises the summary plan description under the Employee Retirement Income Security Act of 1974. As a participant in the Lowe's Welfare Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to receive information about their plan and benefits.

Answer, Exhibit B, at p. 22-25.

Not only does the Lowe's Welfare Plan Administration Document put plaintiff on notice of the applicability of ERISA, plaintiff was further put on notice that the Welfare Plan generally, and the dependent life insurance plan specifically, was governed by ERISA when she received the notice of denial of benefits from MetLife in September 2008. Complaint, Exhibit I.

Section 514(a) of ERISA provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 97 (1983). ERISA's preemption clause is of "unparalleled breadth," Holland v. Burlington Industries, Inc., 772 F.2d 1140, 1147 (4th Cir. 1985), and courts have broadly interpreted its scope to encompass any claim related to the payment, calculation or administration of benefits pursuant to an ERISA plan. Pilot Life Ins. v. Dedeaux, 481 U.S. 41 (1987). In Pilot Life, the Court held that

> the common law causes of action raised in . . . [the] Complaint, each based on an alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for preemption under Section 514(a).

Id., at 49.

It is beyond dispute that "ERISA comprehensively regulates, among other things, employee welfare benefit plans . . . ." Id. ERISA preempts "any and all State laws insofar as they may . . . relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63 (1987). The preemptive impact of ERISA is especially applicable when state laws "risk

**8**

subjecting plan administrators to conflicting state regulations." FMC Corp. v. Holliday, 498 U.S. 52, 59 (1990). The Court in FMC Corp. held as follows:

> To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits.

Id., at 60. That logic would appear equally applicable to varying state common law tort requirements.

Despite plaintiff's argument that her claims only concern negligent acts of Lowe's employees, all of plaintiff's contentions in this Complaint center on her contention that MetLife wrongfully refused to pay dependent life insurance benefits under the Plan. Put another way, had MetLife sent plaintiff a check rather than a denial letter, this action would never have been filed.

ERISA applies to any "employee benefit plan" if the plan is established or maintained by an employer or employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003. An "employee benefit plan" is defined as an employee welfare benefit plan or an employee pension benefit plan. 29 U.S.C. § 1002(3). A plan is a welfare benefit plan if it "was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise … benefits in the event of sickness, accident, disability, <u>death</u> or unemployment." 29 U.S.C. § 1002(1)(emphasis added).

> The law of ERISA expressly preempts all state laws which "relate to" an ERISA plan. This preemption applies to all state law, whether legislative or judge-made.

Central States, Southeast & Southwest Areas Pension Fund v. Howell, 227 F.3d 672,

9

676 (6th Cir. 2000)(citation omitted).  Courts in the Fourth Circuit have consistently held that state law claims of breach of contract, breach of implied covenants of good faith and fair dealing, bad faith tort, insurance bad faith, and violation of the Unfair Trade Practices Act against an employer or Plan administrator are preempted by ERISA. Tri-State Mach. Inc. v. Nationwide Life Ins. Co., 33 F.3d 309, 311 (4th Cir.1994); Lippard v. Unumprovident Corp., 261 F.Supp.2d 368, 375 (M.D.N.C. 2003).

The undersigned is compelled to find and recommend that plaintiff's state law claim is preempted by ERISA and that it should be converted to an ERISA claim in accordance with Metropolitan Life Ins. Co. v. Taylor, supra.

     **C.**    **Dismissal of the ERISA Claim**

Having recommended that plaintiff's claim be converted into one brought under ERISA, the undersigned must now determine whether that claim is properly before this court.  Other than file a claim for benefits, plaintiff has failed to avail herself of the administrative process provided under the Plan, which is discussed above.  In order to seek recovery of benefits in this court, a plaintiff must first exhaust her Plan's administrative remedies.  There is no evidence that plaintiff ever appealed the initial denial of her claim by the Plan administrator.

> An ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.

Makar v. Health Care Corp., 872 F.2d 80, 82 (4th Cir. 1989).  More recently, in Gayle v. United Parcel Service, Inc., 401 F.3d 222 (4th Cir. 2005), the Court of Appeals for

the Fourth Circuit made clear that "[a]n ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." Id., at 226. There is no question but that the Plan documents as well as the denial of the claim provided sufficient notice of plaintiff's administrative obligations if she desired to appeal the denial of her claim.

Plaintiff has brought forth a number of arguments why her claim was improperly denied. The Plan administrator should, and must, have an opportunity to address such contentions in the first instance, prior to bringing such claim to federal court. Without exhaustion,

> [t]here is virtually no factual record to assist this Court in reviewing appellant's claims. The [] fiduciaries have not had an opportunity to define the relevant issues or apply the relevant plan provisions. We cannot tell whether the appellants are deserving benefits because they have not yet had an opportunity to establish their eligibility within the framework of the plans.

Makar, supra, at 83.

Finally, in moving to dismiss, defendant seeks dismissal of this action "with prejudice" arguing that

> [p]laintiff has not and cannot plead that she has exhausted, much less event timely initiated, her administrative remedies under the Welfare Plan procedure, her claim is forever barred.

Defendant's Brief, at 11. While it is certainly true that plaintiff failed to appeal the denial within 60 days as required, the undersigned believes it would be beyond the scope of review to determine that the Plan administrator is prohibited from allowing a late appeal. In Jones v. Calvert Group, Ltd., 551 F.3d 297 (4th Cir. 2009), the Court of Appeals for the Fourth Circuit held that

> Jones nevertheless maintains that even if she failed to exhaust her administrative remedies regarding these claims, the district court erred in entering judgment against her on the merits. On this point we agree with Jones. Because Jones's failure to exhaust administrative remedies deprived the district court of subject matter jurisdiction over the claims, "the only function remaining to the court [wa]s that of announcing the fact and dismissing the cause[s]." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Id., at 301. While Jones concerned Title VII exhaustion, the undersigned respectfully believes the logic is applicable to exhaustion under ERISA. In order to reach the conclusion which defendant has reached, to wit, that plaintiff's opportunity to administratively appeal is foreclosed, the court would be required to conduct a mini-trial that would also frustrate the purpose of administrative exhaustion. Whether the Plan documents allow for exceptions or whether the Plan administrator has the discretion to make an exception is not before this court; indeed, the Plan administrator is not even a party. The decision to allow or deny a late appeal is that of the plan administrator and not that of the named defendant herein, plaintiff's employer. See Answer, at ¶ 4. Heeding the wisdom of Jones, the undersigned must, therefore, respectfully recommend that defendant's Motion for Judgment on the Pleadings be allowed, and that this ERISA action be dismissed *without* prejudice.

The undersigned will, however, recommend that plaintiff's punitive damages claim be dismissed with prejudice as barred by federal law, Mass. Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985), and that her request for jury trial be denied with prejudice as barred by federal law in an ERISA case. Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1006 (4th Cir. 1985).

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion for Judgment on the Pleadings (#11) be **ALLOWED**, that plaintiff's claim, which is preempted by ERISA be **DEEMED** a claim under **ERISA**, and that such **ERISA** claim be **DISMISSED** without prejudice.

**IT IS FURTHER RECOMMENDED** that the remaining claims in the Complaint for punitive damages as well as a jury trial be **DISMISSED** with prejudice as such are barred as a matter of federal law.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten** (**10**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: November 2, 2009

Dennis L. Howell
United States Magistrate Judge